IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-746-F

| | | |
|---|---|---|
| SAM AL-JAMAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **ORDER** |
| | ) | |
| v. | ) | |
| MICHAEL BAKER CORP., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Michael Baker Corporation's ("Defendant" or "Baker") Motion to Dismiss [DE-9]. Plaintiff Sam Al-Jamal ("Plaintiff" or "Al-Jamal") has filed a response, Defendant has replied, and this motion is therefore ripe for disposition. For the reasons stated below, Defendant's Motion to Dismiss [DE-9] is ALLOWED.

## I. PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing a Complaint in Wake County Superior Court on September 10, 2012, alleging wrongful dismissal in violation of North Carolina public policy, fraud, and negligent misrepresentation arising out of the termination of his employment by Baker. After being served with the Complaint on October 18, 2012, Defendant removed this action to this court on the basis of diversity jurisdiction. Thereafter, the parties jointly moved for an extension of time for Plaintiff to file his Amended Complaint and for Defendant to file a responsive pleading thereto. Judge Webb allowed the parties' motion in an Order filed January 4, 2013 [DE-7].

On January 17, 2013, Plaintiff filed his Amended Complaint [DE-8], alleging the following claims: (1) breach of severance agreement; (2) fraud; (3) negligent misrepresentation, and (4) defamation. Defendant filed the Motion to Dismiss for failure to state a claim on February 15, 2013

[DE-9]. In his Response [DE-11], Plaintiff states that he consents to the dismissal of his defamation claim, but opposes Defendant's motion as to the other claims asserted in the Amended Complaint. The court, therefore, will focus its analysis on the first three claims: breach of severance agreement, fraud, and negligent misrepresentation.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, a court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions," and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. FACTS

The facts, as alleged in the Amended Complaint, are as follows. Plaintiff worked for an entity known as LPA Group for approximately eleven years. At some point during his employment,

2

LPA Group transferred Plaintiff from Charlotte, North Carolina, to Irvine, California. According to Plaintiff, "part of his inducement to relocate to California" was that he would be provided with "additional benefits . . . including severance." Amended Compl. [DE-8] ¶ 14. Moreover, Plaintiff alleges he "moved his family to California under the representation that he would have continued employment with the company." *Id.* ¶ 53. While working in California, Plaintiff held the position of "Principal/Assistant Vice President" and "ran part of the North Carolina Business Center." *Id.* ¶¶ 15, 17.

In 2010, Defendant Baker acquired LPA Group. Plaintiff alleges he remained working for Baker after the acquisition under the expectation that severance and benefits would be paid if there was a reduction in force. He also declined other offers of employment based on his belief that his amount of service to the company would be rewarded in the event of an office closure.

Plaintiff was dismissed from employment on August 1, 2011. Plaintiff was informed that he was dismissed for cause due to violations of Baker's policy pertaining to time recording and approval, but alleges that "to his best knowledge and belief, [he] did not violate any policy which would result in dismissal for cause." *Id.* ¶ 24. Around this same time, Defendant was "reducing costs across the entire company by laying off employees and closing redundant office locations." *Id.* ¶ 26. As a result, the Irvine, California, location at which Plaintiff worked shut down operations, which Defendant's President and CEO, Bradley Mallory, approved.

At the time of the Irvine office closing, some, if not all, of the employees in Plaintiff's office, including those who had no more than two years tenure with the company, received severance packages. Plaintiff admits he does not know the exact calculations of the severance to which he allegedly is entitled, but believes that other employees received severance pay ranging from three

to twelve weeks.

Plaintiff alleges he would have been entitled to a severance package and additional benefits had he not been terminated for cause. He also alleges that his move to Irvine, California, and continued work for Defendant during the office closure constituted sufficient consideration to support a promise of severance pay. He contends, however, that Defendant's Chief Operating Officer, John Kurgan, and Senior Vice President, Dwight Schock, conspired with Mallory to create a situation where Plaintiff could be terminated for cause. Specifically, Plaintiff alleges that Defendant fraudulently and negligently fabricated charges against Plaintiff "so as to have him stripped of his severance and benefits" as well as to "strong-arm Plaintiff into leaving his position quietly." *Id.* ¶¶ 34-35, 47-51, 58.

## IV. DISCUSSION

Baker moves to dismiss all of Plaintiff's claims in the Amended Complaint. As detailed above, Plaintiff's common-law state claims sound in his belief that he is entitled to severance benefits. At the outset, the court observes that some severance benefits implicate the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Specifically, severance benefits paid pursuant to a plan which requires the establishment and maintenance of a separate and ongoing administrative scheme constitute an "employee benefit plan" governed by ERISA. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987); *Lomas v. Red Storm Entm't, Inc.*, 49 F. App'x 396, 400 (4th Cir. 2002) (per curiam) (unpublished); *Yarber v. Capital Bank*, ___ F. Supp.2d ___, 2013 WL 1127082, at *3 (E.D.N.C. March 18, 2013) ("The hallmark of an ERISA plan is that it requires an ongoing administrative program to meet the employer's obligation.") (internal quotation omitted). As a general rule, ERISA preempts any state law claims that refer to

or have a connection with ERISA-regulated benefit plans. *See* 29 U.S.C. § 1144(a) (providing generally that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (determining that a plaintiff's state-law fraud claim was preempted), *abrogated in part on other grounds by Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003). In determining whether severance pay provisions constitute ERISA benefit plans, courts examine several factors, including:

> (1) the amount of managerial discretion granted in paying the benefits and whether a case-by-case review of employees is needed; (2) whether payments are triggered by a single, unique event in the course of business or on a recurring basis; (3) whether the employer must make a one-time, lump-sum payment or continuous periodic payments; and (4) whether the employer undertook any long-term obligations with respect to the payments.

*Yarber*, 2013 WL 1127082 at **3-4 (quoting *Mulally v. Ins. Servs. Office, Inc.*, 395 F.Supp.2d 290, 295 (M.D.N.C. 2005).

In the instant case, the conspicuous absence of any discussion of ERISA's potential preemption of Plaintiff's common law claims indicates that the parties do not believe ERISA is applicable to the severance benefits at issue.[1] For purposes of this motion, the court has assumed that the severance benefits at issue are not part of an ERISA-regulated employment benefit plan, and therefore Plaintiff's common law claims are not preempted.

---

[1] Plaintiff does make a reference to ERISA in the Amended Complaint, but he appears to be making statements about severance agreements in general, as opposed to any aspect of the alleged benefits at issue in this case:
> 37. Agreements terminating the association between an employer and employee have generally been upheld where the facts show a valid offer and acceptance.
> 38. Such severance agreements may be [sic] exist under ERISA, under another written plan, or by actions of employers and employees.

Amended Complaint [DE-8].

5

## A. Breach of Severance Agreement

Baker argues that Plaintiff's claim for breach of severance agreement must be dismissed because he has failed to allege the existence of a valid contract or allege facts showing there was a meeting of the minds. Plaintiff, in response, asserts he has pleaded sufficient facts to support a claim for breach of contract; alternatively, he argues that he could be allowed to proceed on a theory of quantum meruit. The court concludes that Plaintiff has failed to state a viable claim for breach of the severance agreement, and therefore Baker's motion to dismiss is ALLOWED as to Plaintiff's first claim for relief.

Under North Carolina law,[2] "the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) (internal quotations omitted). Formation of a contract requires "an agreement to which at least two parties manifest an intent to be bound." *Id.* (citing *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921)). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1994) (citing *O'Grady v. First Union Nat'l Bank of N.C.*, 296 N.C. 212, 221, 250 S.E.2d

---

[2] This court must follow North Carolina's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Under North Carolina law, the governing law of contract claims is determined by *lex loci contractus*, or the place where the contract was formed. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428 526 S.E.2d 463, 466 (2000). The place where a contract is formed is determined by "place at which the last act was done by either of the parties essential to a meeting of the minds." *Key Motorsports, Inc. v. Speedvision Network, LLC*, 40 F. Supp. 2d 344, 347 (M.D.N.C. 1999) (quoting *Fast v. Gulley*, 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967)). Plaintiff's allegations in the Amended Complaint imply the alleged severance agreement was formed, if at all, in North Carolina prior to his transfer. For that reason, the court will assume North Carolina law governs his change. The court's analysis, however, would be the same under California law.

587, 594 (1978)). Indeed, a contract does not exist if "one party simply believes that a contract exists, but there is no meeting of the minds." *Elliott v. Duke Univ.*, 66 N.C. App. 590, 595, 311 S.E.2d 632, 636 (1984) (citing *Brown v. Williams*, 196 N.C. 247, 145 S.E. 233 (1928)).

In this case, Plaintiff has failed to allege sufficient facts to state a plausible breach of contract claim. The facts, as alleged, fail to show a meeting of the minds as to the essential terms of any severance agreement between the parties. Plaintiff alleges he was induced to move to California because he would receive "severance." Amended Compl. [DE-8] ¶ 14. The Amended Complaint, however, fails to set forth any facts showing what, if anything, Plaintiff and LPA Group agreed to regarding the terms of any severance payments, such as for example, what events or actions would trigger the payment of severance benefits or how the amount of severance would be calculated. Indeed, Plaintiff's response in opposition to the motion to dismiss seems to confirm that no contract was formed prior to his move to California; he argues that "[f]ormation of a contract which bound the two parties occurred during the closure of the [Irvine, California] office, where most if not all employees where [sic] receiving a severance package." Resp. [DE-11] p. 5. This allegation as to benefits received by other employees, however, does not suffice to show that Baker entered into a contract *with Plaintiff*. Again, the facts as alleged do not show a meeting of the minds.

Nevertheless, Plaintiff argues that he should be allowed "to submit evidence at least on the issue of *quantum meruit*." Resp. [DE-11] p. 6. Notably, however, there is no quantum meruit claim alleged in the Amended Complaint. The court declines to assume the viability of an unpleaded claim.

Accordingly, Baker's motion to dismiss is ALLOWED as to Plaintiff's breach of severance agreement claim. This dismissal of this claim, however, is without prejudice to Plaintiff to file an

7

amended complaint which attempts to correct the deficiencies noted herein, or in the alternative and if appropriate, attempts to state a claim under ERISA.

**B. Fraud**

Baker also moves to dismiss Plaintiff's fraud claim, arguing that Plaintiff failed to allege sufficient facts to give rise to a plausible claim, and that Plaintiff failed to satisfy Rule 9(b)'s pleading requirements.

"Under California law, the indispensable elements of a fraud claim based on deceit include: (1) misrepresentation (such as false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages." *Elias v. Hewlett-Packard Co.*, ___ F. Supp. 2d ___, 2013 WL 3187319, at *8 (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).[3] Additionally, where a plaintiff pleads fraud, Rule 9(b) requires him to "state with particularity the circumstances constituting the fraud . . . ." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be plead with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Under California law, "[i]n a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or

---

[3] Again, this court must follow North Carolina's choice of law rules. In North Carolina, courts traditionally apply the rule of *lex loci delicti* to tort claims. *See Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). Accordingly, "[f]or actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Id.* at 335, 368 S.E.2d at 854. Plaintiff's allegations indicate that he was injured in California, and the court therefore applies California law to Plaintiff's fraud claim. The result, however, would be the same under North Carolina law.

8

written.'" *Dhaliwal v. Singh*, No. CV F 13-0484 LJO SKO, 2013 WL 2664336, at *10 (E.D. Cal. June 12, 2013 ) (quoting *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861 (1991)).

In the Amended Complaint, Plaintiff rests his fraud claim upon his allegations that Baker–through the actions of Mallory, Kurgan, and Schock–"frauduently fabricated charges against Plaintiff so as to have him stripped of his severance and benefits." Amended Compl. [DE-8] ¶ 47. This is patently insufficient to sustain Plaintiff's fraud claim. Plaintiff does *not* allege that he relied on any false representation concerning the stated reason for his riring, nor do the facts suggest he could allege such. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239, 44 Cal. Rptr.2d 352, 900 P.2d 601 (1995) ("Reliance exists when the misrepresentation or nondisclosure was the immediate cause of the plaintiff's conduct which altered his legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction.").

Apparently recognizing this, Plaintiff argues that he "should be allowed to present evidence under constructive fraud." Pl's Mem. Opp. Mot. to Dismiss [DE-11] p. 7. To survive a motion to dismiss a claim of constructive fraud, whether the claim is brought under North Carolina or California law, a plaintiff must allege facts and circumstances which show the existence of a confidential or fiduciary relationship, "which has led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of the plaintiff." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) (internal quotation and citations omitted); *Patriot Scientific Corp. v. Korodi*, 504 F. Supp. 2d 952, 966 (S.D. Cal. 2007). Here, Plaintiff has alleged an employer-employee relationship, which generally is not a fiduciary or

9

confidential relationship under either North Carolina or California law, absent some allegation of facts showing a relationship of trust and confidence. *See Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 708 (2001) ("Under the general rule, the relation of employer and employee is not one of those regarded as confidential.") (internal quotation marks omitted); *Amid v. Hawthorne Cmty. Med. Grp., Inc.*, 212 C. App.3d 1383, 1391, 261 Cal. Rptr. 240 (1989) ("A bare employee-employer relationship does not create a confidential relationship."). The Amended Complaint does not contain allegations, however, which indicate that Plaintiff's relationship with Baker differed from that of the typical employee-employer relationship. His argument that his move from North Carolina to California is indicative of a confidential relationship is unavailing. *See Korodi*, 504 F.Supp. 2d at 966-67 (explaining that an employee's unilateral placement of trust does not transform an employee-employer relationship into a confidential one because "an employee is not justified in placing trust and confidence in the integrity and fidelity of an employer solely because of the employment relationship").

Accordingly, Baker's Motion to Dismiss is ALLOWED as to Plaintiff's claim for fraud. Again, this dismissal is without prejudice to Plaintiff to file an amended complaint which attempts to correct the deficiencies noted herein, or in the alternative and if appropriate, attempts to state a claim under ERISA. Plaintiff is cautioned that any claim for fraud must satisfy Rule 9(b)'s pleading requirements.

## C. Negligent Misrepresentation

For similar reasons, Plaintiff's negligent misrepresentation claim also fails. Under North Carolina law, "the tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the

10

relying party a duty of care." *Brinkman v. Barrett Kays & Assoc., P.A.*, 155 N.C. App. 738, 742, 575 S.E.2d 40, 43-44 (2003). As with his fraud claim, Plaintiff's allegations in the Amended Complaint supporting his negligent misrepresentation claim focus on Baker's "negligent fabricat[ion]" of charges against Plaintiff... so as to strong-arm Plaintiff into leaving his position quietly." Amended Compl. [DE-8] ¶ 58. As a matter of law, Plaintiff could not have relied, to his detriment, on this alleged misrepresentation about the reason for the termination of his employment. Consequently, Baker's Motion to Dismiss is ALLOWED as to Plaintiff's claim for negligent misrepresentation. Again, this dismissal is without prejudice to Plaintiff to file an amended complaint which attempts to correct the deficiencies noted herein, or in the alternative and if appropriate, attempts to state a claim under ERISA. Plaintiff is cautioned that any negligent misrepresentation claim must satisfy Rule 9(b)'s pleading requirements.

### III. CONCLUSION

For the foregoing reasons, Defendant Baker's Motion to Dismiss is ALLOWED, and Plaintiff's claims for breach of severance agreement, fraud, and negligent misrepresentation are DISMISSED WITHOUT PREJUDICE and his claim for defamation is DISMISSED with prejudice. Plaintiff may file an amended complaint, however, within twenty-one days of the filing date of this order, to attempt to address the deficiencies noted herein. Plaintiff is cautioned that any fraud or negligent misrepresentation claims must comply with Federal Rule of Civil Procedure 9(b). If Plaintiff fails to file an amended complaint within that time period, the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 3rd day of July, 2013.

                                                     */s/ James C. Fox*
                                            James C. Fox
                                            Senior United States District Judge